CHARLES B. GREENE
ATTORNEY AT LAW
84 W. SANTA CLARA STREET SUITE 770
SAN JOSE, CALIFORNIA 95113
(408) 279-3518
STATE ID # 56275
Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No.: 10-57370 asw |
| THE HIGHLANDS OF LOS GATOS, LLC., | Chapter 11 |
| | DEBTOR'S DISCLOSURE STATEMENT |
| | Date: December 14, 2010 |
| | Time: 2:15 p.m. |
| | Judge Arthur S. Weissbrodt |

  This Disclosure Statement (the "Disclosure Statement") has been prepared by representatives of The Highlands of Los Gatos, LLC, (the "Debtor"), and is being distributed to creditors of the Debtor for the purpose of providing background and information concerning the Debtor's Plan of Reorganization dated October 14, 2010 (the "Plan"). This Disclosure Statement is intended to provide the holders of claims against or interests in the Debtor ("Holders") with adequate information regarding the Plan consistent with Bankruptcy Code Section 1125. Any questions regarding this Disclosure Statement may be directed to Debtor's attorney, Charles B. Greene, Esq., 84 W. Santa Clara #770, San Jose, CA 95113, telephone (408) 279-3518.

  The formulation and confirmation of a Plan of Reorganization is the principal function of a Chapter 11 case. Such a plan normally includes provisions for: (a) altering and modifying the rights of creditors; (b) dealing with the property of the Debtor; (c) paying the costs and expenses of administering the Chapter 11 case; and, (d) execution of the Plan. The Plan may affect the interest of all parties and creditors, reject executory contracts, and provide for prosecution or settlement of claims that belong to the Debtor.

  In order to be confirmed by the Court, the Code requires that there be a finding that the Plan receives the votes of certain requisite classes and that the Plan be "fair, and equitable" as to any

dissenting classes or creditors.

The Plan must be accepted by the affirmative vote of the majority (in number) of at least one class of impaired creditors and two-thirds (in amount) of the voting creditors of claims filed and allowed.

THE FOREGOING IS A BRIEF SUMMARY OF THE HIGHLIGHTS OF A PLAN AND CONFIRMATION OF SUCH.

The Disclosure Statement describes the assets and liabilities of the Debtor, and the forecast of the debtor of future financial returns. It also summarizes the terms of the Plan, which divides creditors and shareholders into a series of different classes, provides for payment of secured and priority creditors claims from operating revenues of the Debtor's business.

If the Plan is confirmed, it will be binding on all creditors of the Debtor.

I

BACKGROUND OF DEBTOR

A. History of Debtor and Its Background

The Debtor is a limited liability company formed in 2003. The Debtor is the owner of certain real property located in the Town of Los Gatos, county of Santa Clara. The real property consists of approximately 66 acres of land. The 66 acres of land have been subdivided into 22 parcels. Of the 22 parcels, 19 of the parcels have been developed for construction of single family residences.

The members of the Debtor consist solely of Sandy F. Harris. Mr. Harris is a resident of the city of Campbell. As is more fully disclosed herein, Mr. Harris personally guaranteed the principal secured indebtedness which encumbers the property.

From the time of the acquisition of the property (between 2003 and 2006), and the filing of the voluntary petition, Mr. Harris, as managing member of the Debtor, had overseen the construction of infrastructure on the property, to include, but not limited to, installation of PG&E gas lines and electrical serves lines, ingress and egress street improvements curbs and gutters, sewage, storm drains, and water lines. The main water line installation from the pump station and the new water tank has been delayed for various reasons, to include, the need for approximately $500,000.00 to $750,000.00 in funding to finish this phase of the facilities.

The principal secured creditor of the Debtor, East-West Bank, had filed for foreclosure proceedings against the real property and the trustee's sale was scheduled to take place on July 19, 2010. In order to preserve and protect the equity in the property, Debtor's managing member, Sandy Harris, chose to file a voluntary petition on July 16, 2010.

B. Assets and Liabilities

On the Petition Date, the Assets and Liabilities, according to the Debtor's records, included the following:

ASSETS:

| | |
|---|---|
| Real Property: | $32,000,000.00 |
| Comerica bank account: | $410.51 |
| United Commercial / East West bank account: | $29,890.95 |
| Contengent Accounts receivable: | $1,347,000.00 |
| TOTAL: | $33,377,301.46 |

LIABILITIES:

| | |
|---|---|
| First deed of trust to East-West Bank: | $21,000,000.00 |
| Second deed of trust to Marin Mortgage: | $3,632,000.00 |
| County of Santa Clara Tax Assessor : | $126,000.00 |
| Unsecured debt: | $6,862,680.22 |
| Interest and late fees Secured Debt | $ 3,255,450.00 |
| TOTAL: | $34,840,130.22 |

II

POST-FILING OPERATIONS AND FINANCIAL CONDITION OF DEBTOR

A. Since the Debtor filed its Chapter 11, it has been a debtor-in-possession. The loan obligation owed to East-West Bank has not been serviced since the date of the filing. There have been no payments made to the County of Santa Clara on prior account of periodic real estate tax payments

however the next tax bill is due in December.

The first deed of trust obligation to East-West Bank is all due and payable. Limited negotiations have occurred between Debtor's counsel and counsel representing East-West Bank concerning possible restructuring of the obligation. As of the date of this Disclosure Statement, no restructuring agreements have been reached between the Debtor and East-West Bank.

The Debtor has not incurred any post-petition secured or unsecured debt (excepting for the accrual of interest and other charges on the East-West Bank obligation and the pre-petition obligation owed to the Santa Clara County Tax Assessor's Office).

### III THE PLAN

A. <u>Plan Objectives</u>

The Plan sets forth payment proposals with regard to the secured debt and other creditors. The Plan also seeks modification of various creditor obligations.

B. <u>Specifications and Treatment of Claims</u>

The Plan divides creditors into various classes based upon their legal rights, and classifies all unsecured creditors into a single class.

1. <u>Administrative Claims</u>

Unclassified Allowed Administrative Claims, entitled to priority under Section 507(a)(1) of the Bankruptcy Code, will receive payments as may be agreed upon between the Debtor and the administrative claimants. There is an administrative claim for professional fees owed to Debtor's counsel, Charles B. Greene, in the approximate sum of $17,912.00 as of October 14, 2010 (the Debtor paid $17,000.00 to Charles B. Greene as and for a retainer fee and filing fee at the initiation of the case). Any retainer fee paid by the Debtor and approved by the Court will be applied against the total aggregate professional fees incurred and owed to Charles B. Greene. There are no other administrative professional claims which the Debtor is aware of at the present time.

2. <u>Pre-Petition Claim of the Internal Revenue Service.</u>

The Internal Revenue Service does not have a pre-petition claim.

3. <u>Pre-Petition Claim of the Franchise Tax Board</u>.

The Franchise Tax Board does not have a pre-petition claim.

4. Pre-Petition Claim of the Santa Clara County Tax Assessor.

There is a obligation owed to the Santa Clara County Tax Assessor in the amount of $126,000.00 on account of pre-petition taxes. The Santa Clara County Tax Assessor claim shall be paid in full in accordance with the payment plan previously established by and between the Debtor and the Santa Clara County Tax Assessor.

5. Class A - Secured Claim of East-West Bank.

Class A consists of the secured claim of East-West bank. East-West Bank holds a first deed of trust against the Debtor's real property. The amount presently owed to East-West Bank is approximately $23,000,000.00. The current fair market value of the property, according to the Debtor's managing member, is approximately $32,000,000.00. The Debtor proposes to pay to the Class A creditor the full amount of principal plus interest at the contract rate and any applicable attorney fees and costs as follows:

a. The Debtor shall sell each of the 19 lots over a period not to exceed 24 months from the date of Plan approval, and from the proceeds of sale of each lot, the Class A creditor shall receive an amount of money equal to not less than 1/19th of the balance due and owing to East-West Bank as of the date of close of escrow of sale of the first lot (for example, if at the time of close of escrow of sale of the first lot, the total balance owed to the Class A creditor is $25,000,000.00, then the Class A creditor shall receive payment of not less than $1,315,790.00).

b. Concurrent with payment of the sum of money from escrow, the Class A creditor shall record a partial release of its lien which encumbers the specific lot sold.

c. The Class A claimant shall retain its lien to the same priority and validity against the remaining unsold lots as existed as of the date of filing of the voluntary petition.

The Class A creditor is an impaired creditor, because the Debtor seeks to modify the terms of the loan obligation.

6. Class B - Secured Claim of Marin Mortgage.

Class B consists of the secured claim of Marin Mortgage. Marin Mortgage holds the second and third deed of trust against the Debtor's real property. The amount presently owed to Marin

Mortgage is approximately $3,632,000.00. The current fair market value of the property, according to the Debtor's managing member, is approximately $32,000,000.00. The Debtor proposes to pay to the Class B creditor the full amount of principal plus interest at the contract rate and any applicable attorney fees and costs in full on or before 24 months following the entry of the order approving the Plan of Reorganization.

The Class B creditor is an impaired creditor, because the Debtor will not be paying to the Class B creditor any payments on account of the obligation prior to payment in full of the obligation as provided for herein.

7. Class C - Allowed Unsecured Claims.

Class C consists of all unsecured claims which have been filed with the Court, including those creditors identified on Schedule F who have not filed claims. Attached hereto as Exhibit "A" is a list of the unsecured claimants, by name, and either the amount of filed claims or the amount identified by the Debtor (if the filed claim is greater than the claim amount filed by the Debtor, then the filed claim amount is identified). The Class C claimant shall be paid 100% of their total claims, without interest, over a period not to exceed 30 months. No distribution will be made to the unsecured creditors until the earlier of two years from date of approval of the Plan of Reorganization or payment in full of the Class A and B claimants. The Class C claimants are impaired.

8. Class D: Debtor Equity Interest.

Class D consists of the interest of the Debtor's sole member, Sandy F. Harris. Mr. Harris has contributed $2,000,000.00 to the Debtor. Mr. Harris shall not be paid any distribution or any amounts on account of return of equity or payment of loans until such time as the full amount of the claims of the Class A, B and C creditors have been paid in full. The Class D creditor is an impaired creditor.

C. Other Plan Provisions

1. Disbursing Agent

Unless otherwise provided herein, the disbursing agent for all sums to be paid to the Class A creditor shall be the escrow or title company representing the Debtor with regard to sale of the real property lots. The disbursing agent with regard to payment of the dividend to the Class B creditors shall be the Debtor's representatives.

2. <u>Objections to Claims (both pre-petition and post-petition).</u>

The Debtor will have the responsibility for objecting to the Allowance of Claims, including pre-petition claims and post-petition claims. All objections shall be filed with the Court and served upon creditors not later than 45 days following approval of the Debtor's Plan of Reorganization. Any claim which is not objected to within 45 days following approval of the Debtor's Plan of Reorganization shall be deemed "non-disputed" and shall be paid in accordance with the provisions for the classes of creditors.

3. <u>Executory Contracts</u>

There are no executory contracts.

4. <u>Prepayment</u>

Nothing in this Disclosure Statement shall prohibit early distribution on account of allowed claims; such distribution may be made at the option of the Debtor without penalty.

IV

<u>THE "BEST INTEREST" TEST AND THE LIQUIDATION ANALYSIS</u>

Notwithstanding acceptance of the Plan by the requisite statutory majorities, in order to Confirm the Plan the Bankruptcy Court must independently determine the Plan is in the best interest of all the impaired classes of Claims and Interest. The "best interest" test requires that the Plan provide to each member of each impaired class a recovery that has a present value at least equal to the present value of the distribution which such a member would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. The total secured debt against the Debtor's real property is approximately $23,000,000.00. The fair market value of the property, according to the Debtor's representatives, is at least $32,000,000.00. Consequently, there is excess equity in the property that would be available for payment to the Class C, unsecured claimants. In the event that the property were foreclosed upon, by either the Class A or Class B creditors, it is possible that the Class C claimants would not receive any dividend should the property be sold for no more than the amount owed to the Class A and Class B claimants. Therefore, the Debtor asserts that the plan as proposed is in the best interest of all creditors in that the Class A claimant and Class B claimant would receive full payment of all of the principal, interest, and other charges associated with their respective claims, and

the Class C claimants would receive a very significant dividend on account of their unsecured claims.

V

FEASIBILITY

The Court must determine whether or not the Debtor's proposal is feasible, and not likely to be followed by subsequent bankruptcy proceedings should the Court confirm the Debtor's proposed plan.

The Debtor's managing member, Sandy F. Harris, believes that the plan is feasible for several reasons, to include the following:

    a.    Based on information provided to Mr. Harris by real estate professionals and experts regarding the valuation of the real property and current economic conditions, to include the banks own appraisal and much improved lending conditions, and the amount of interest the Debtor is receiving in the lots this year. The 19 lots can be sold for significantly more than is owed to East-West Bank within 24 months.

VI

PREFERENCE, FRAUDULENT CONVEYANCE, CLAIMS AGAINST OTHERS

The Debtor and Debtor's counsel have reviewed all payments paid to creditors within the ninety (90) days immediately preceding the filing of the Voluntary Petition to determine if any preference actions exist. It is the opinion of the Debtor and Debtor's counsel that no preference actions, claims for fraudulent conveyance, or claims against any other party which would financially benefit the Debtor presently exist.

VII

TAX CONSEQUENCES

Creditors are advised to consult with their tax advisors regarding the individual federal, state and local tax consequences of the Plan to them. Debtor and his counsel make no representations regarding such matters and assume no responsibility for such matters. The Debtor has conferred with his accountant and been advised that there is no adverse tax consequence which would be incurred by the Debtor as a result of confirmation of the Plan of Reorganization as proposed by the Debtor and if the court does not confirm the plan could have serious tax implications for the Debtor..

The tax consequences of the implementation of the Plan to an unsecured creditor holding an

allowed claim will depend on (a) the type of consideration received by the creditor and (b) whether the creditors report income on the accrual basis; and (c) the creditor's individual and particular income tax circumstances.

## VIII

## CONFIRMATION OF THE PLAN

A. Acceptance.

The Bankruptcy Code requires that each Class of Claims or Interests accept the Plan, unless the Plan is imposed on a dissenting class as described in Section C below. The Bankruptcy Code defines acceptance by a class of Claims as acceptance by holders of two-thirds in dollar amount and a majority in number of Claims of that class. However, only the votes of those Claimants who actually vote to accept or to reject the Plan are counted for this purpose.

Classes of Claims not "impaired" under a Plan are deemed to have accepted the Plan. A Class is "impaired" if the legal, equitable, or contractual rights attaching to the Claims of that Class are modified, other than by curing defaults and reinstating maturities or by payment in full in cash.

Acceptances of the Plan are, therefore, being solicited from the A, B and C creditors.

B. Effect of Confirmation

On the Effective Date, all property of the estate shall vest in the Reorganized Debtor pursuant to Section 1141(b) of the Bankruptcy Code, provided that the vesting of said property shall be without prejudice and shall not act as a bar to a post confirmation motion to convert this case to one under chapter 7 of title 11 by the United States Trustee or any other party in interest on any appropriate grounds, and upon the granting of such motion the Plan shall terminate and the chapter 7 estate shall consist of all remaining property of the chapter 11 estate not already administered. Such remaining property shall be administered by the chapter 7 trustee as prescribed in chapter 7 of the Bankruptcy Code. The Reorganized Debtor reserves the right to oppose any such motion.

C. Postconfirmation United States Trustee Quarterly Fees  A quarterly fee shall be paid by [the reorganized debtor] to the United States Trustee, for deposit into the Treasury, for each quarter (including any fraction thereof) until this case is converted, dismissed, or closed pursuant to a final

decree, as required by 28 U.S.C. § 1930(a)(6).

D. <u>Chapter 11 Postconfirmation Reports And Final Decree</u>  (i) Post-confirmation Reports. Within 30 days following the end of the calendar quarter in which the plan was confirmed, [the reorganized debtor] shall file a post-confirmation report ("Quarterly Report") in a format provided by the United States Trustee, the purpose of which is to explain the progress made toward substantial consummation of the confirmed plan of reorganization. The Quarterly Report shall include the ending cash balance and a statement of receipts and disbursements for the portion of that calendar quarter not already reported on previously filed monthly operating reports. The Quarterly Report shall also include information sufficiently comprehensive to enable the court to determine: (1) whether the order confirming the plan has become final; (2) whether deposits, if any, required by the plan have been distributed; (3) whether any property proposed by the plan to be transferred has been transferred; (4) whether [the reorganized debtor] under the plan has assumed the business or the management of the property dealt with by the plan; (5) whether payments under the plan have commenced; (6) whether accrued fees due to the United States Trustee under 28 U.S.C. § 1930(a)(6) have been paid; and (7) whether all motions, contested matters and adversary proceedings have been finally resolved. Further Quarterly Reports must be filed within 30 days following the end of each subsequent calendar quarter until entry of a final decree, unless otherwise ordered by the court.  (ii) Service Of Reports. A copy of each Quarterly Report shall be served, no later than the day upon which it is filed with the court, upon the United States Trustee and such other persons or entities as may request such reports in writing by special notice filed with the court.  (iii) Final Decree. After the estate is fully administered, [the reorganized debtor] shall file an application for a final decree, and shall serve the application on the United States Trustee, together with a proposed final decree.

DATED October 14, 2010.

/s/ Sandy F. Harris
**SANDY F. HARRIS**
**Designated Agent of Debtor**