1  EDWINA E. DOWELL, # 149059
   Assistant U.S. Trustee
2  NANETTE DUMAS, # 148261
   JOHN S. WESOLOWSKI, # 127007
3  EMILY S. KELLER, # 264983
   United States Department of Justice
4  Office of the United States Trustee
   280 S. First Street, Suite 268
5  San Jose, CA 95113-0002
   Telephone:    (408) 535-5525
6  Fax:          (408) 535-5532

7  Attorneys for August B. Landis
   Acting United States Trustee for Region 17

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | Case No. 10-57370 ASW |
| THE HIGHLANDS OF LOS GATOS, LLC, | Chapter 11 |
| | Date: December 14, 2010<br>Time: 2:15 p.m. |
| Debtors. | Place: Courtroom 3020 |

**UNITED STATES TRUSTEE'S OBJECTION
TO DEBTOR'S DISCLOSURE STATEMENT**

The United States Trustee (the "UST") hereby files the following objection with respect to the Debtor's Disclosure Statement ("Disclosure Statement" or "DS") and Proposed Plan Of Reorganization ("Plan") filed herein by The Highlands of Los Gatos, LLC ("Debtor").

**Disclosure Statement:**

1. At page 2, the Debtor describes an issue concerning the installation of a water line and a new water tank for the real property, and states that it will cost between $500,000 and $750,000 to complete this phase of the infrastructure. However, nowhere in the DS does the Debtor explain how this will be accomplished, nor the source of the money to finish the task. Will the Debtor need to borrow this money? From whom? Will this need to be completed prior to the sale of any lots? More

information is needed about this issue.

2. At page 3, the Debtor lists the unsecured debt as $6,862,680.22 – this is the amount listed in Schedule F, and also the amount shown in Exhibit A. However, the debtor has omitted two creditors listed in Amended Schedule F – Herman Farriss ($2,057.19, listed as disputed) and Toni Anderson ($100,000). These claims need to be added to Exhibit A.

3. At page 4, line 24, the Debtor states there are no other administrative professional claims – but what about other post-petition claims that may have arisen since the petition date? Are there any?

4. At page 5, lines 8-10, does the $23 million owed to East-West Bank include all accrued interest and costs? What about the interest and late fees of $3,255,450 listed at page 3, line 22– who is owed this amount? And what is the contract rate of interest for Class A?

5. At page 5, the Debtor will need to show that the Plan is feasible, including whether the individual lots will have sufficient value to pay 1/19 of the then-outstanding balance owed to Class A upon a sale. Also, will the Debtor be obtaining the employment of a real estate broker to sell the properties? If so, who? The sale of the lots is of paramount importance to the Plan, and the broker is an integral part of these sales. The identity of the broker is something that the creditors would be interested in knowing, as they vote on the Plan.

6. At page 6, the treatment of Class B is a bit vague – the DS says Class B will be paid in full within 24 months after confirmation. Does this mean that Class B must wait until Class A is paid in full? And what is the contract rate of interest? Finally, there is no provision for the partial release of Class B's lien upon a sale of a lot, which seems critical.

7. In the discussion of Class D (equity), it is stated that "Mr. Harris will not be paid any distribution or any amounts on account of return of equity or payment of loans

until . . . the Class A, B and C creditors have been paid in full." But Mr. Harris is a Class C creditor with a scheduled claim of $2 million – should this claim be removed from Class C and effectively subordinated?

8. At the bottom of page 6, the words "and C" should be added after "Class B" at line 26.

9. At page 7, the statement regarding "no executory contracts" is wrong – in the Plan (at page 6), the Debtor proposes to assume a contract with WIN Machining Sheet Metal, Inc.

10. At page 7, line 20, the statement that the total secured debt against the property is $23 million is wrong, since it omits accrued interest and costs in favor of Class A, plus it completely omits the Class B claim.

11. At page 8, the feasibility discussion is pretty thin. The Debtor will need to make a showing that the Plan is feasible, and that the subject lots can reasonably be sold in accordance with the Plan provisions.

12. At page 9, line 7, the reference to "Section C below" is in error.

**Plan:**

1. Same comments as above, where and as applicable.

2. At page 5, lines 8-9, the phrase "as provided for herein" is vague. Does the Debtor mean that Class B won't receive anything until Class A is paid in full?

For the foregoing reasons, the Debtor's Disclosure Statement should not be approved until necessary changes are made.

Dated: December 6, 2010                    Respectfully submitted,


By: _/s/  John S. Wesolowski_
      John S. Wesolowski
      Attorney for the U.S. Trustee