JEFFER MANGELS BUTLER & MITCHELL LLP
RICHARD A. ROGAN (Bar No. 67310)
KEVIN W. CHEN (Bar No. 238791)
Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3824
Telephone: (415) 398-8080
Facsimile: (415) 398-5584

Attorneys for Secured Creditor EAST WEST BANK

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

| | |
|---|---|
| In re<br><br>THE HIGHLANDS OF LOS GATOS, LLC<br><br>Debtor. | CASE NO. 10-57370<br><br>Chapter 11<br><br>**OPPOSITION OF EAST WEST BANK TO DEBTOR'S DISCLOSURE STATEMENT DESCRIBING DEBTOR'S PROPOSED PLAN OF REORGANIZATION**<br><br>Date: December 14, 2010<br>Time: 2:15 p.m.<br>Judge: Honorable Arthur S. Weissbrodt<br>Courtroom 3035<br>280 South First Street<br>San Jose, CA |

## I. THE DISCLOSURE STATEMENT OMITS CRITICAL INFORMATION NEEDED FOR CREDITORS TO MAKE AN INFORMED JUDGMENT ABOUT THE PLAN

Secured Creditor East West Bank ("Bank") opposes the approval of the Disclosure Statement proposed by Debtor Highlands of Los Gatos, LLC ("Debtor").

This single asset real estate case was filed on July 16, 2010. Debtor is the owner of an unfinished 19-lot subdivision in Los Gatos, California (the "Property"). Debtor's loans have matured or are in default, and Debtor is out of cash. Debtor needs $750,000 by its own calculation to bring water service to the Property. Until water service is available, the lots cannot be sold to end users or speculative builders.

Debtor proposes to sell the Property to pay off its creditors, but fails to provide

OPPOSITION OF EAST WEST BANK TO DISCLOSURE STATEMENT

"adequate information" in the proposed Disclosure Statement as required by 11 U.S.C. § 1125 to the creditors as to how the Debtor intends to raise funds sufficient to bring water service to the Property and sell the lots at retail given the fact that the Debtor has closed no sales over the past two years.

## II. LIENS AND CLAIMED VALUE OF DEBTOR'S PROPERTY

Debtor has two major secured creditors. Bank is the first with a claim of at least $23,000,000.00, secured by a first Deed of Trust on the Debtor's real property. Disclosure Statement, at page 5, lines 7-8. The Disclosure Statement is inaccurate as it does include the full amount of principal, interest, fees, and other costs owed by the Debtor for a total sum of $23,443,983.49, evidenced by the Proof of Claim filed by the Bank on November 8, 2010.

Marin Mortgage ("Marin") has a claim secured by a second Deed of Trust on Debtor's real property in the sum of $3,632,000.00. Disclosure Statement, at page 6, line 1. Presumably this amount includes principal, interest, fees, and other costs, but it is unclear from the Disclosure Statement.

Combined, the Debtor has separately listed interest and late fees on these secured debts of at last $3,255,450.00. Disclosure Statement, at page 3, lines 21-22. In addition, Debtor also has unsecured debt in the amount of $6,862,680.22. Disclosure Statement, at page 3, lines 20-21.

Debtor claims the Property is worth $32,000,000.00. Bank disputes that value, and is preparing to move for relief from the automatic stay on all available grounds, including that Debtor has no equity in the property and the property is not necessary for an effective reorganization. 11 U.S.C. §362(d)(2). Bank also reserves the right to move for stay relief under 11 U.S.C. §362(d)(1) and (3), if appropriate.

## III. SPECIFIC DEFECTS IN THE DISCLOSURE STATEMENT

The proposed Disclosure Statement fails to provide creditors and shareholders with sufficient information so that they can make an "informed judgment about a plan of reorganization." In re Scioto Valley Mortgage, Co., 88 B.R., 168, 170 (Bankr. S.D. Ohio 1988). "[A] Disclosure Statement must contain all pertinent information bearing on the success or failure of the proposals and the plan of reorganization. In re Cardinal Congregate I, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990), citing In re Stanley Hotel, Inc., 13 B.R. 926, 929 (Bankr. D.Colo. 1981).

Creditors rely on the disclosure statement to evaluate the feasibility of a plan and to decide whether to reject or accept the proposed impairment of their claims and interests. In re Microwave Products of America, Inc., 100 B.R. 376, 377 (Bankr. W.D. Tenn. 1989). In this case, the Disclosure Statement is inadequate for the following reasons.

### A. No Explanation On How the Debtor Will Complete the Water Installation

A disclosure statement should set forth the capital needs of the debtor. Microwave Products, op. cit., 100 B.R. at 378. The Debtor notes that there is still a "need for approximately $500,000.00 to $750,000.00 in funding to finish this phase of the facilities." Disclosure Statement, at page 2, lines 26-28. Debtor presents no details as to the fact that work remains incomplete and the costs and fees that are needed to finish the lots, except a vague ballpark guess. At most there is approximately $30,000 in readily available funds in the Debtor's bank accounts. Disclosure Statement, at page 3, lines 10-12. Creditors are given no information as to how the Debtor will fund the necessary work to complete water system so that the lots can be sold at retail. This omission is critical since the whole premise of the Plan is to pay the Bank and other creditors from the sale of the 19 lots at retail prices, which admittedly cannot occur without the water system. Disclosure Statement, at page 5, lines 12-18.

There is no discussion as to what will happen if Debtor is unable to come up with the $750,000 to fund the completion of the water system. In that case, the entire process of reorganization in this case will be for naught, and the creditors will be worse off than they are today.

### B. No Explanation On How the Debtor Will Pay Class B – D Claims

Debtor also fails to provide information on the source of payment for any of the Class B, C, and D claims. For Class B, the Debtor merely states that it "proposes to pay to the Class B creditor the full amount of principal plus interest at the contract rate and any applicable attorney fees and costs in full." Disclosure Statement, at page 6, lines 1-5. Yet the Debtor proposes to sell lots for 1/19 of the amount due to the Bank, which would leave nothing for other creditors. Disclosure Statement, at page 5, lines 12-19. For Class C, the Debtor simply states they "shall be paid 100% of their total claims, without interest, over a period not to exceed 30 months." Disclosure

Statement, at page 6, lines 13-15. Lastly, the disclosure for Class D is equally meager with the Debtor simply stating "Mr. Harris shall not be paid any distribution or any amounts . . . until such time as the full amount of the claims of the Class A, B and C creditors have been paid in full." Disclosure Statement, at page 6, lines 19-22. Presumably, all payments will be derived from the sale of the lots since the Property is the sole asset of this Debtor, but this is unclear from the Disclosure Statement.

### C. Inadequate Description of Treatment of Bank's Claim

It is also unclear from the Disclosure Statement whether Bank will be paid interest on a current basis and whether Bank will retain its rights under its current loan agreements. The language at page 5 of the Disclosure Statement refers to Bank's claim as "secured", but fails to clearly explain that the Bank will be entitled to periodic interest payments, and in what amount.

### D. Inadequate Explanation How Debtor Intends to Sell or If Sale Does Not Occur

The Disclosure Statement fails to include any discussion of risk factors. Debtor refers to the need to complete the water system, but does not provide any discussion of the feasibility of the Plan if the water system is not completed. Disclosure Statement, at page 2, lines 25-28. Details of completing the water system are critical because the basis of the payments to the Bank is premised on the sale of the lots that make up the Property.

Furthermore, the Debtor has also not provided any details in the Disclosure Statement on how the Debtor plans to market the lots nor does the Debtor explain what will happen if the Debtor fails to either (1) sell a lot for at least "1/19th of the balance due and owing" to the Bank or (2) fails to sell a single lot. Disclosure Statement, at page 5, lines 6-25. The Debtor has tried to sell the lots for more than a year and there is no indication in the Disclosure Statement that the Debtor has come close to selling even one lot. These are important omissions that demonstrate that the Disclosure Statement is missing adequate information to allow creditors to reasonably evaluate the proposed Plan.

As noted in Cardinal Congregate I, supra, 121 B.R. at 767, "The Disclosure Statement should more fully explain the consequences of any such sale or refinancing upon all allowed claims and interests." The Disclosure Statement does not describe a meaningful exit

1 strategy from the current predicament of the Debtor. Given that the Plan does not provide for
2 adequate protection payments to Bank, the only hope that Bank and other creditors have of being
3 repaid in full rests with the Debtor's ability to move the development process forward to add value
4 to the Property, but no specifics as to the Debtor's plans are provided in the Disclosure Statement.

### E. There Is No Showing That Debtor's Plan is Feasible

Bankruptcy Code Section 1129(a)(11) requires that in order for a plan to be confirmed, it must, in essence, be feasible. Creditors are entitled to a disclosure statement that addresses whether "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor . . . ." that is not contemplated by the plan.

> The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.

Pizza of Hawaii, Inc. v. Shakey's Inc., 761 F.2d 1374, 1382 (9th Cir. 1985), quoting 5 Collier on Bankruptcy ¶1129.02[11] at 1129-34 (15th ed. 1984).

The plan described in the Disclosure Statement is such a "visionary scheme." Here, if the Disclosure Statement is approved and the Plan is confirmed, the Debtor will likely simply delay an inevitable liquidation since Debtor's only basis for feasibility is the belief of Debtor's managing member, Sandy F. Harris. Disclosure Statement, at page 8, lines 3-12. No further details of the feasibility are provided by the Debtor. Absent concrete details, the Disclosure Statement fails to provide the requisite adequate information for creditors to determine whether the Debtor's scheme is, in fact, "visionary" or whether the Debtor is flying in the dark.

### F. The Disclosure Statement Contains Inconsistencies with the Plan

Page 7 of the Disclosure Statement states that there are no executory contracts, however, page 6 of the Plan states that the executory contract with WIN Machining Sheet Metal, Inc. shall be assumed. This discrepancy also needs to be clarified.

///

///

## IV. THE DISCLOSURE STATEMENT DOES NOT MEET THE STANDARDS REQUIRED BY SECTION 1125

These are critical and serious omissions from the Disclosure Statement. Bank respectfully submits that the proposed Disclosure Statement does not contain adequate information that would allow creditors to reasonably evaluate the proposed plan and to make an informed judgment as to whether or not to accept it. For these reasons, approval of the Disclosure Statement should be denied.

DATED: December 6, 2010

JEFFER MANGELS BUTLER & MITCHELL LLP
RICHARD A. ROGAN
KEVIN W. CHEN

By: /s/ Kevin Chen
　　　KEVIN W. CHEN
Attorneys for Secured Creditor EAST WEST BANK